TOMAS MORALES (SBN 146578)
UNIT 1, 3160 LIONSHEAD AVENUE
CARLSBAD, CA 92010
TEL. (760) 597-7011

JENNIFER B. COTTIS (SBN 180854)
LAW OFFICES OF JENNIFER B. COTTIS
2216 S. EL CAMINO REAL, SUITE 115
OCEANSIDE, CA 92054
TEL. (760) 473-0828
JCOTTIS@JCOTTISLAW.COM

Attorneys for Plaintiff EQUITY AG FINANCIAL, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EQUITY AG FINANCIAL, INC., a California corporation,<br><br>Plaintiff,<br><br>-vs-<br><br>THE PLANTATION GOLF CLUB, INC., a California domestic nonprofit corporation,<br><br>Defendant. | Case No.:<br><br>COMPLAINT FOR:<br><br>1. VIOLATIONS OF CALIFORNIA'S CIVIL RIGHTS ACT, CIVIL CODE §§ 51 ET SEQ. (DISCRIMINATION BASED ON SEX)<br>2. VIOLATIONS OF SECTION 10(b) OF THE SECURITIES EXCHANGE ACT, AND RULE 10b-5 THEREUNDER<br>3. TAX FRAUD<br>4. CONSPIRACY/RICO |

Plaintiff EQUITY AG FINANCIAL, INC. ("Plaintiff" or "EQUITY AG")

hereby alleges as follows against Defendant THE PLANTATION GOLF CLUB,

INC. ("Defendant" or "THE PLANTATION"):

1

## INTRODUCTION

1.      Formed in 1997, Defendant THE PLANTATION is a country club in California which originally acquired, and continues to enjoy, tax-exempt status under Internal Revenue Code ("I.R.C.") Section 501(c)(7). THE PLANTATION's application for such status required that it affirm its agreement to act in conformance with all applicable and relevant statutes, including state and local laws. Despite the same, THE PLANTATION has capitalized upon its § 501(c)(7) status to exclude all women from its premises, membership and services in direct violation of California law, including the California Unruh Civil Rights Act ("UCRA"). The UCRA was in effect at the time of Defendant's application for its non-profit status and which applies equally to non-profit entities like THE PLANTATION. The UCRA expressly forbids discrimination against anyone on the basis of sex.

2.      Defendant THE PLANTATION should reasonably have known at the time of its formation and/or inception that it was in violation of the UCRA through its wholesale exclusion of women. Defendant utilized the legal services of a specific law firm in order to apply and obtain its tax-exempt status. Defendant has since additionally been expressly made aware that it is in material violation of this anti-discrimination law, including through other litigation proceedings.

2

3.      Defendant THE PLANTATION has failed and refused to cease and desist its unlawful discrimination against women, instead using the artifice of its non-profit tax-exempt, social club status to engage in additional unsavory and unlawful business practices, including tax fraud, illicit gambling and SEC violations. Among other things, THE PLANTATION has engaged in the practice of giving no equity membership to its male members who buy-in. Originally, a membership buy-in cost $20,000 for which members purportedly received a "piece" of the club they could sell when relinquishing their memberships. Over time, the buy-in amount increased, while the amount of "equity" assigned to members decreased and grew more illusory, to the point members supposedly received just $1 in equity. Plaintiff is informed and believes that the current buy-in amount is $100,000 or more, for which members now receive no "equity" at all. This membership arrangement has been tantamount to placing its members in a class equivalent to the general public, which use and play the course for a fee. Unlike other courses that are open to the public, however, THE PLANTATION excludes women completely, with the result that Defendant effectively accepts fees from men only in the public, in violation of not only the UCRA but also I.R.C. § 501(c7) limitations. Without court intervention, Defendant's violations of federal and state law and policy will continue unfettered.

COMPLAINT
Case No.

4.      Plaintiff EQUITY AG, formerly "JCM Farming," is an entity formed in the 1990's which has engaged in various farming, agricultural and related business activities. Plaintiff has a long and proven agricultural history, during which Plaintiff has from time to time entered into joint venture arrangements with other entities, to take advantage of respective strengths and opportunities, and to thereon maximize returns on agriculture-related ventures.

5.      In or about 2007, Plaintiff entered into a joint venture business relationship with THE PLANTATION, not unlike arrangements Plaintiff had made in the past. Plaintiff did so unaware of Defendant's unlawful activities. Plaintiff had a reasonable expectation that THE PLANTATION was lawfully operating and would continue to lawfully conduct itself in conjunction with the joint venture. The parties agreed to join together in a venture for the purpose of planting and cultivating high-quality Medjool date palm trees, to grow and care for the trees through the date of their maturity for sale. Plaintiff agreed to provide the young pup tree offshoots, while Defendant agreed to plant, grow and harvest the trees and dates, which venture the parties agreed and understood would occur over a period of decades, including due to the length of time it naturally takes such trees to grow to maturity and the lifespan of their fruit-producing activity. The joint venture also include the parties' harvesting the date fruit from the palms, all for profit. The joint venture called for the parties' mutual consent for transactions.

4

COMPLAINT
Case No.

6. When THE PLANTATION grew anxious that profits anticipated from the venture would exceed the limit imposed for maintaining their 501(c)(7) eligibility, which status Defendant covets in order to carry out its discrimination against females and other illicit activities, Defendant deliberately repudiated and breached the parties' joint venture agreement. As a result, Defendant's violation of the UCRA was the cause of the failure of the joint venture and THE PLANTATION's material breaches of its agreement and obligations owing to Plaintiff.

7. This is an action to secure relief for violations of rights guaranteed by California Civil Code §§ 51 et seq., otherwise known as the Unruh Civil Rights Act ("the Unruh Act"), as well as an action for securities violations, tax fraud, and violations of the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §§ 1961 et seq. ("RICO"). Defendant has been engaging in a scheme to defraud Plaintiff, its club members, and members of the public of money and property through the purported sale of securities in the form of equity membership shares in the club, its evasion of tax regulations, and its use of mails, telephones, and/or wires to execute its scheme.

## **THE PARTIES**

COMPLAINT
Case No.

8.    Plaintiff EQUITY AG is a corporation duly organized and existing under the laws of the State of California, with its principal place of business in the City Carlsbad, County of San Diego, State of California.

9.    Defendant THE PLANTATION is a California domestic nonprofit corporation (California corporate number C1912583) with its principal place of business in the City of Indio, County of Riverside, State of California.

## JURISDICTION AND VENUE

10.    This Court has original subject-matter jurisdiction pursuant to the Securities Exchange Act of 1934 ("the Exchange Act"), including Section 27 and Rule 10b-5, 15 U.S.C. § 78aa, 18 U.S.C. § 1964(c), 28 U.S.C. § 1331, and the rules and regulations promulgated thereunder, because this action includes claims for federal securities fraud, tax fraud, and violations of the federal Racketeer Influenced and Corrupt Organizations Act ("Federal RICO").

11.    This Court also has subject-matter jurisdiction. Plaintiff's damages are in excess of $75,000, exclusive of interest and costs.

12.    This Court has jurisdiction over Plaintiff's related state and common law claims pursuant to the doctrine of supplemental jurisdiction. 28 U.S.C. § 1367.

13.    This Court has personal jurisdiction over Defendant THE PLANTATION because a substantial part of the events occurred in this district. Venue is proper under Section 27 of the Exchange Act given Defendant's place of

COMPLAINT
Case No.

business and perpetration of the alleged wrongdoings herein. Further, this Court has personal jurisdiction over Defendant under 28 U.S.C. § 1965(b) because in any action brought pursuant to the Federal RICO statute in a U.S. District Court, that Court may cause parties residing in another district to be summoned to that district if the "ends of justice" require it. Given the facts in this case, the ends of justice require this Court's exercise of personal jurisdiction over THE PLANTATION.

**FIRST COUNT**

**VIOLATION OF CALIFORNIA'S UNRUH CIVIL RIGHTS ACT,**

**CIVIL CODE §§ 51 ET SEQ.**

**(Discrimination Based on Sex/Gender)**

14.     Plaintiff incorporates by reference each and every allegation contained within the forgoing paragraphs of this Complaint.

15.     California Civil Code Section 51(b) et seq., the UCRA, provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex…are entitled to the full and equal accommodations, advantages, facilities, privileges, or services of all business establishments of every kind whatsoever." Pursuant to the United States Supreme Court's decision in *Board of Directors of Rotary International v. Rotary Club of Duarte* (1987) 481 U.S. 537, private associations or entities in California that function as businesses are subject to the anti-discrimination laws of the UCRA.

COMPLAINT
Case No.

16.     THE PLANTATION is a "business establishment" within the meaning of the UCRA Section 51(b) et seq.  By limiting membership to men, THE PLANTATION in effect provides a forum which encourages business relations to grow amongst men and fosters a commercial advantage for its members.

17.     THE PLANTATION's conduct has violated, and continues to violate, the UCRA by denying all women full and equal access to the facilities, privileges, membership and services of Defendant's business establishment. As alleged herein above, Plaintiff has standing to pursue this claim arising from Defendant's violations of the UCRA because Defendant repudiated and breached the parties' joint venture in order to enable Defendant to continue to hide behind the guise of its 501(c)(7) status for the purpose of engaging in discrimination on the basis of sex. Even though the parties had expressly projected the sizeable amount of anticipated profits from their venture, new management at THE PLANTATION began to worry that the income threatened the club's single-sex men-only existence and so they decided to kill the joint venture. Defendant pretended to purchase the entire stock of the inventory of Medjool date trees surviving on the property and sold the land where the trees had been growing to a third party. THE PLANTATION unilaterally declared the parties' partnership terminated, all in material breach thereof.

COMPLAINT
Case No.

18. Further, Defendant refused full and fair access and admittance to Plaintiff's President, Ms. Mari Marrelli, when she attempted to visit the golf club. Ms. Marrelli had to be snuck in to the club, dressed as a male golfer, in order to perform an inspection of the parcel dedicated to the parties' date tree joint venture.

19. Defendant's violations of the UCRA have been continuous and occur to this day. Defendant's ongoing violations continue to harm Plaintiff and the general public, as Plaintiff's female employees, as well as female members of the public, continue to be banned from accessing and enjoying the premises, facilities, memberships and services of THE PLANTATION.

20. Moreover, THE PLANTATION continues to use its violations of the UCRA to enable it to collect buy-in fees from its male members in exchange for an illusory one-dollar in equity, tantamount to accepting user and player fees from only men in the general public, giving Defendant an unfair competitive advantage over golf courses open to both sexes in the public.

21. Plaintiff is informed and believes and thereon alleges that Defendant additionally continues to perpetuate its discrimination against women in violation of the UCRA for the purpose of facilitating other unsavory and unlawful activities at its club, including high-stakes, unregulated gambling and golf tournaments participated in by high profile, wealthy men. Such ongoing discriminatory activities harm Plaintiff and the general public at large, including persons and

9

entities who lawfully operate gambling establishments in conformance with state and federal law.

22. As a direct and proximate result of THE PLANTATION's wrongful actions, Plaintiff has suffered damages, all in an amount to be proven at trial but exceeding the jurisdictional limits of this Court. Plaintiff seeks the disgorgement of all profits generated by Defendant during its existence and perpetration of practices in violation of the UCRA and other laws and promulgations as alleged herein, together with such other remedies, penalties, and/or relief afforded by the UCRA.

23. Pursuant to California Civil Code Section 52, Plaintiff seeks a temporary restraining order, preliminary and permanent injunctive relief, and such other injunctive and/or equitable relief, to stop Defendant from continuing to discriminate women in both club memberships and the full and fair access, use, and enjoyment of Defendant's premises, facilities and services. Defendant must lose its federal Section 501(c)(7) status and its non-profit status in California must be revoked. Defendant should further be ordered to change its policies, procedures and services to ensure that persons of the female sex enjoy the same rights and access as men, without discrimination of any kind.

24. Plaintiff seeks to vindicate rights and interests affecting the public at large, including the right of all women to enjoy the same opportunities and access to businesses and services as their male counterparts. By this lawsuit, Plaintiff

10

pursues wrongdoings and relief which stand to benefit a significant segment of the general public. As a result, Plaintiff's attorney's fees and costs should be borne by Defendant under the private attorney general doctrine found in California Code of Civil Procedure Section 1021.5 and such other statutes and any federal counterparts.

**SECOND COUNT**

**VIOLATIONS OF SECTION 10(b) OF THE SECURITIES EXCHANGE ACT, AND RULE 10b-5 PROMULGATED THEREUNDER**

**(Against All Defendants)**

25.     Plaintiff incorporates by reference each and every allegation contained within the forgoing paragraphs of this Complaint.

26.     At all times relevant herein, Defendant has carried out a plan, scheme and course of conduct that was intended to, and which did and does, deceive male members of the public and caused such members of the public to remit monies for a membership. Originally, the buy-in for a member was $20,000, but while it increased over time, climbing to $100,000, the amount of "equity" received by each member in turn has decreased, ultimately dropping to $1, and now no dollars. Defendant has represented the buy-ins constituted an equity membership in THE PLANTATION rather than traditional membership dues or fees.

27.   Defendant has employed devices, schemes and artifices to engage in the aforementioned fraud, made untrue statements of material fact and/or omitted material facts necessary to make the statements not misleading, and engaged in acts, practices and a course of conduct which operated as a fraud and deceit upon purchasers of "equity" memberships in THE PLANTATION. Such purchasers have paid Defendant in the realm of up to $100,000 in exchange for illusory and non-existent equity memberships, which purchase price payments were the equivalent of traditional membership fees which a non-profit golf club is not legally permitted to charge given its tax-exempt status. Defendant has failed to provide the requisite disclosures to the members purchasing these equity memberships. Defendant's conduct continues to be in material violation of Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder.

28.   As a direct and proximate result of Defendant's violations and wrongdoings, Plaintiff has suffered damages in amount subject to proof at the time of trial. Defendant repudiated and/or breached the parties' joint venture agreement in order to enable Defendant to continue to hide behind its Section 501(c)(7) status and thereunder collect hundreds of thousands, indeed millions, of dollars in membership fees disguised as equity memberships. The profits projected to be recouped under the joint venture stood to exceed those permissible to a non-profit

COMPLAINT
Case No.

entity, which would have precluded Defendant from continuing to perpetrate its securities violations under the radar while maintaining its tax-exempt status.

29. As a direct and proximate result of Defendant's ongoing violations and wrongdoings, Plaintiff seeks the assignment and placement of a receiver at THE PLANTATION, to receive and hold in trust all fees and membership purchases made by members who have been promised equity shares in the club. The funds remitted by members to Defendant are in imminent danger of being wasted, disposed of or otherwise wrongfully absconded by Defendant and placed out of reach during the pendency of this litigation, as to subject Plaintiff and Defendant's members to a grave injustice. Other remedies are inadequate to preserve the millions of dollars acquired by Defendant through its securities fraud acts and omissions.

30. Plaintiff additionally seeks an order requiring Defendant to make all necessary disclosures to its members regarding the fact of the instant lawsuit, the counts and allegations, and the request for the appointment of a receiver, as to ensure all members are furnished with all material information affecting the value of their membership buy-ins.

31. Plaintiff seeks to vindicate rights and interests affecting the public at large, including the right of all women to enjoy the same opportunities and access to businesses and services as their male counterparts. By this lawsuit, Plaintiff

pursues wrongdoings and relief which stand to benefit a significant segment of the general public. As a result, Plaintiff's attorney's fees and costs should be borne by Defendant under the private attorney general doctrine found in California Code of Civil Procedure Section 1021.5 and such other statutes and any federal counterparts.

## THIRD COUNT

### TAX FRAUD

### (Against All Defendants)

32.     Plaintiff incorporates by reference each and every allegation contained within the forgoing paragraphs of this Complaint.

33.     Under Section 501(c)(7) of the IRC, in order to acquire and preserve its non-profit status, an entity may not receive more than 35 percent of its gross receipts from non-members or investment income. Such tax-exempt entities are also restricted in the amount of unrelated business income they may generate. A 501(c)(7) social club which collects millions of dollars in revenues in exchange for illusory or non-existent "equity" memberships is unlawfully engaged in unrelated business activities, not being operated for pleasure, recreation or other nonprofitable purposes. Characterizing the millions in revenues as equity memberships also stands to materially violate the rule against the receipt of more than 35 percent of gross receipts from investments. The disbursement of funds

14

from the nonprofit entity for the private benefit or inurement of officers, board members or other individuals is likewise prohibited and jeopardizes the tax-exempt status of such business.

34.     As alleged herein, Defendant has engaged in the securities violation of selling illusory or non-existent "equity" memberships in THE PLANTATION for the purpose of enabling Defendant to appear to operate as a nonprofit organization, and to continue thereby to discriminate against women in connection with its ownership, membership and services in violation of the UCRA. This unlawful conduct, which is perpetrated to hide the millions of dollars received by Defendant as unrelated business income and receipts in excess of the statutory limit for investments, constitutes tax fraud in violation of IRC § 501(c)(7) and related provisions and promulgations. Plaintiff is informed and believes and thereon alleges that the millions of dollars reaped by Defendant during its sale of memberships may be for the private benefit or inurement of individuals who oversee, manage and/or operate THE PLANTATION.

35.     Defendant has additionally engaged in acts of tax fraud through its hosting on its premises illicit gambling and other unsavory activities, in which its male members freely engage in unregulated high-stakes card and dice games, betting and other schemes involving large amounts of cash, without reporting the revenues thereby to the I.R.S. and state taxing authorities. Such rampant,

15

unreported illegal activities are not engaged in for nonprofit purposes and constitute tax fraud, to the detriment of these authorities as well to law-abiding establishments which follow the taxation rules when providing gambling and similar activities to paying members of the public.

36.     As a direct and proximate result of Defendant's violations and wrongdoings, Plaintiff has suffered damages in amount subject to proof at the time of trial. Defendant repudiated and/or breached the parties' joint venture agreement in order to enable Defendant to continue to hide behind its Section 501(c)(7) status and thereunder collect millions of dollars in membership fees disguised as equity memberships. The profits projected to be recouped under the joint venture stood to exceed those permissible to a non-profit entity, which would have precluded Defendant from continuing to collect millions in exchange for illusory or non-existent "equity" memberships and from continuing to host illegal gambling and other illicit activities with unreported cash receipts, in violation of federal and state tax regulations.

37.     As a direct and proximate result of Defendant's ongoing violations and wrongdoings, Plaintiff seeks the assignment and placement of a receiver at THE PLANTATION, to receive and hold in trust all fees and membership purchases, including those made by members who have been promised equity shares in the club as well as all monies received by Defendant through its

COMPLAINT
Case No.

unregulated gambling activities. The funds are in imminent danger of being wasted, disposed of or otherwise wrongfully absconded by Defendant and placed out of reach during the pendency of this litigation, as to subject Plaintiff and Defendant's members to a grave injustice. Other remedies are inadequate to preserve the millions of dollars acquired by Defendant through its securities fraud acts and tax fraud.

38. Plaintiff seeks to vindicate rights and interests affecting the public at large, including the right of all women to enjoy the same opportunities and access to businesses and services as their male counterparts. By this lawsuit, Plaintiff pursues wrongdoings and relief which stand to benefit a significant segment of the general public. As a result, Plaintiff's attorney's fees and costs should be borne by Defendant under the private attorney general doctrine found in California Code of Civil Procedure Section 1021.5 and such other statutes and any federal counterparts.

**FOURTH COUNT**

**<u>Conspiracy/RICO</u>**

**(Against All Defendants)**

39. Plaintiff incorporates by reference each and every allegation contained within the forgoing paragraphs of this Complaint.

17

40.    Plaintiff alleges that Defendant's conduct, including as alleged herein above, constitutes racketeering as set forth in 18 U.S.C. §§ 1961 - 1967. Specifically, Congress has defined "racketeering" to include state and federal offenses, including illegal gambling, money laundering, wire fraud, and fraud committed by means of electronic transmissions. Defendant is an enterprise engaged in activities that affect interstate commerce, including through its transmission and receipt of communications and funds across state lines. Defendant has engaged in a pattern of racketeering, including more than two instances of committing securities and tax fraud by electronic transmissions, including communications and funds exchanged by wire or other electronic means, and illegal gambling, betting and other unregulated activities. Plaintiff is informed and believes that Defendant has used the profits generated by the unlawful RICO violations for improper purposes and has filed returns and/or other records by electronic means with state and federal taxing authorities which fail to report the investments, gambling and other unlawful and/or excessive receipts.

41.    Plaintiff is informed and believes and thereon alleges that individuals associated with Defendant's enterprise have conspired to engage in the pattern of racketeering through the operation of THE PLANTATION as a nonprofit entity.

42.    Plaintiff has injured in its business because of Defendant's racketeering activities. As alleged herein, Defendant repudiated and/or breached

18

the parties' joint venture agreement in order to enable Defendant to continue to hide behind its Section 501(c)(7) status and thereunder engage in the offenses described herein constituting violations of the federal RICO statute. The profits projected to be recouped under the joint venture stood to exceed those permissible to a non-profit entity, which would have precluded Defendant from continuing to perpetrate its securities and tax fraud violations, and illegal gambling under the radar while maintaining its tax-exempt status. Plaintiffs losses are in an amount to be proven at the time of trial.

43.  Under 18 U.S.C. § 1962, Defendant is liable to Plaintiff for three times Plaintiff's damages, plus the costs of this suit, including reasonable attorney's fees.

WHEREFORE, Plaintiff prays for damages and relief against Defendant under all Counts as follows:

1.  For all special and compensatory damages in an amount to be proven at trial, including Defendant's disgorgement of all revenues and profits;

2.  For the placement of a receiver in Defendant's business and establishment of a constructive trust on all revenues generated by Defendant;

3.  For temporary restraining order, preliminary and permanent injunctive relief;

COMPLAINT
Case No.

4.      For an order requiring Defendant to make all necessary disclosures to its members and prospective members;

5.      For attorney's fees and costs;

6.      For interest on all sums owing at the legal rate of interest;

7.      For such other and further relief as afforded by law.

On the Fourth Count:

1.      For treble damages according to proof at trial.

Dated:                                          EQUITY AG FINANCIAL, INC.

                                        By:   /s/  Tomas Morales
                                              Tomas Morales,
                                              Attorney for Plaintiff EQUITY AG
                                              FINANCIAL, INC.

COMPLAINT
Case No.